**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES KING, | : | |
| | : | Civil Action No. 13-cv-2186 |
| Plaintiff, | : | |
| | : | |
| | : | Judge Rambo |
| v. | : | |
| | : | |
| | : | **Filed Via ECF** |
| SGT. MYERS, et al., | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF DEFENDANTS MYERS', VOGT'S, AND
CLARK'S MOTION FOR SUMMARY JUDGMENT**

***RELEVANT PROCEDURAL HISTORY***

The Plaintiff is Charles King, an inmate, who, at the times relevant to this case, was incarcerated at the State Correctional Institute at Smithfield. ("SCI-Smithfield"). Complaint, ¶4. The Plaintiff commenced this matter by filing a Complaint on August 19, 2013. Named as Defendants were: Sgt. Myers, Officer Vogt, and Officer Clark, all of whom were Corrections Officers employed at SCI-Smithfield at the time of the relevant events.

The Complaint alleged that Defendants Myers, Officer Vogt, and Officer Clark failed to protect him or timely intervene in a November 9, 2011, attack perpetrated on the Plaintiff by a cellmate. On January 27, 2014, the Plaintiff filed an Amended Complaint. Defendants Myers, Vogt, and Clark answered the

Amended Complaint on February 27, 2014.  The Amended Complaint named additional Defendants:  Dr. Long, Mr. Poland, Dr. Dolpave, Mrs. McCarty, and Dr. Wiesner.[1]

In the Amended Complaint, the Plaintiff makes additional claims related to his medical care after he was assaulted by Mitchell.  *Amended Complaint, Doc. 24, ¶ 29*-37.

Defendant McCarty has moved that she be dismissed as a Defendants from the Amended Complaint.  Although the Court has not yet ruled on the motion, the Plaintiff does not oppose McCarty's motion.

Contemporaneously with this brief, Defendants Myers, Vogt, and Clark have filed a motion for summary judgment.

### STATEMENT OF FACTS

The statement of Material Facts filed concurrently with this brief is incorporated by reference.  In summary, Inmate Mitchell received a misconduct for a mutual fight in the prison's general population yard.  Statement of Facts, "SOF", 1.  Mitchell was transported to the Restricted Housing Unit.  SOF, ¶ 2. Sgt. Myers

---

[1] Although the Court ordered service of the Amended Complaint on February 6, 2014, to counsel's knowledge, the United States Marshal has not sent the requests to waive summons.  Of the new Defendants, the only Department of Corrections employee is Mrs. McCarty.  The other new defendants are not Department of Corrections employees, and it is anticipated that they would be represented by separate counsel.

was working in the general population yard that day, and was therefore assigned to escort Mitchell. *Id*.

The entire transport was videotaped.  SOF ¶, 5.    The video footage also depicts the activity outside the cell before, during, and after the assault.  *Id.* The escort began on the K-Block at the time marked on the camera clock as 4:42:56. Exhibit A.  *Id*.    Mitchell is escorted through a hallway, and outside in the prison yard. SOF, ¶ 8.  Mitchell is silent during the escort.  SOF, ¶¶ 10, 18.  Mitchell was placed in a strip search cage and strip searched.  After the strip search, Sgt. Myers read Mitchell a list of questions designed to determine whether Mitchell was a suicide risk. SOF, ¶ 12.  Mitchell answered no to all questions.  *Id*.

At 4:51:50 in the video, another officer, over the radio, directs Lt. Allison to transfer Mitchell to cell B22. SOF, ¶ 14.  Sgt. Myers was not assigned to the RHU and was not involved in the decision on where to house Mitchell. SOF, ¶  3.  Myers and the other escorting officers were told which cell to bring Mitchell to.  SOF, ¶ 4. Neither Inmate Mitchell nor Inmate King had a "Z Code" which required them to be single-celled. SOF, ¶ 15.

The video proves that Mitchell was silent during the entire escort, which disproves the Plaintiff's allegations that Mitchell loudly stated that he would not take a cellmate.

The video shows that the escorting officers open the door to cell B22 at 4:53:47, and Mitchell is placed in the cell at 4:53:54. SOF, ¶ 19.  The handcuffs are removed from Mitchell at 4:54:03. SOF, ¶ 20.

At 4:54:06 on the clock displayed on the video, Sgt. Myers states "We got a fight in here" and immediately calls the problem to the attention of Lt. Allison, the ranking officer.  SOF, ¶ 21.  The RHU bubble officers have exclusive control over the opening and closing of the doors in the RHU through the control devices in the RHU bubble.  SOF, ¶ 22.   Myers was not assigned to the RHU that day, and therefore, the radio he was equipped with did not have the capability to communicate with the RHU bubble.   SOF, ¶ 23.  Lt. Allison arrives at the door at 4:54:13, seven seconds after Myers called for him.  SOF, ¶ 24.  The escorting officers command Mitchell to stop fighting at least three times from 4:54:15- 4:54:20.  SOF, ¶ 25.  Allison appears to have a short conversation with Mitchell through the cell door from 4:54:23-4:54:29.  SOF, ¶ 26.  The officers open the door at 4:54:35.  SOF, ¶ 27.  After the door opens, the officers immediately secure Mitchell on the floor.  SOF, ¶ 28.   At the end of the video, the officers conduct a debriefing as to what occurred. SOF, ¶ 29.

## *QUESTIONS PRESENTED*

I.  SHOULD SUMMARY JUDGMENT BE ENTERED IN FAVOR OF THE DEFENDANTS ON PLAINTIFF'S FAILURE TO PROTECT CLAIM PRIOR TO

THE ASSAULT BECAUSE THE PLAINTIFF HAS FAILED TO ESTABLISH THAT THE DEFENDANTS WERE DELIBERATELY INDIFFERENT TO A SERIOUS RISK OF HARM?

Suggested Answer:    Yes.

II.  SHOULD SUMMARY JUDGMENT BE ENTERED IN FAVOR OF THE DEFENDANTS ON THE PLAINTIFF'S FAILURE TO INTERVENE DURING THE ASSAULT BECAUSE THE OFFICERS ACTED REASONABLY TO INTERVENE?

Suggested Answer:  Yes.

## *DISCUSSION*

I.  SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE DEFENDANTS ON PLAINTIFF'S FAILURE TO PROTECT CLAIM PRIOR TO THE ASSAULT BECAUSE THE PLAINTIFF HAS FAILED TO ESTABLISH THAT THE DEFENDANTS WERE DELIBERATELY INDIFFERENT TO A SERIOUS RISK OF HARM.

It is well-settled that the Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).   In order to prevail on an Eighth Amendment claim for failure to protect, plaintiffs must prove deliberate indifference on the part of correctional officials. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837).   Under the deliberate indifference standard, "a prison official cannot be found liable… unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (Quoting *Farmer*, 511 U.S. at 837)  Additionally, "an official's failure to alleviate a significant

risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. The mere presence of circumstances from which a reasonable person could infer an excessive risk to inmate health or safety is insufficient; rather, the official must actually make the inference and disregard it. *Id.* at 837. "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842-43. Although an inmate need not wait until an actual assault takes place, there must be a "pervasive risk of harm." *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985). "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." *Id.*

The Plaintiff cannot demonstrate that any of the named Defendants were deliberately indifferent to the risk that Mitchell might attack him. The Plaintiff's complaint was premised on the allegation that Mitchell repeatedly told the officers during the escort that he would not accept a cellmate, and it was loud enough that it could be heard by other inmates. *Amended Complaint*, 18. Additionally, the

6

Plaintiff alleged that Mitchell was in the RHU for assaulting a prior cellmate. *Amended Complaint*, 19.  Neither of these allegations are true.  The entire escort of Mitchell was video recorded.  The video contains audio, and at no point did Mitchell give any indication that he would refuse a cellmate or harm a cell mate.    To the contrary, Mitchell was largely silent and cooperative during the escort.  Moreover, Mitchell did not have a Z-Code, which would require him to be single-celled.

The allegation that Mitchell was in the RHU for assaulting a prior cellmate is also false.  Mitchell had been a general population inmate, and was entering the RHU after receiving a Misconduct B433692 for a mutual fight with another inmate, Inmate Bulow, in the prison yard.   According to the misconduct, both inmates had marks on them after the fight, and both acted like nothing happened after the officer noticed the fight.   See Exhibit E.  There is simply nothing inherent in the incident that would impute actual knowledge to any prison official of a substantial risk of harm to King from celling him with Mitchell.

Additionally, the Defendants Clark or Myers could not be liable because there is no genuine issue of material fact that they were not involved in any way in any decision to house Mitchell and King together.

Clark was not involved in the escort of Mitchell.  His only role was that he responded after the assault was already in progress.  Clark arrived just as the door

was opened, and escorted the Plaintiff to medical as the other officers subdued Mitchell.

Myers was not assigned to the RHU at the time, but was only in the RHU for the purposes of escorting Mitchell from the general population yard, where he received a misconduct.  The escorting officers were simply told which cell to bring Mitchell to.  They had no involvement in any decision on where to place him.

## II.  SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE DEFENDANTS ON THE PLAINTIFF'S FAILURE TO INTERVENE DURING THE ASSAULT BECAUSE THE OFFICERS ACTED REASONABLY TO INTERVENE.

Corrections officers who fail to intervene in an inmate-on-inmate assault may be liable if the officers had "a realistic and reasonable opportunity to intervene" and "simply refused to do so."  *Bistrian v. Levi*, 696 F.3d 353, 371 (3rd Cir. 2012) (quoting *Smith v. Messinger*, 293 F.3d 641, 650-651 (3rd Cir. 2002).  As explained by the court in *Bistrian, "*No doubt, there are some circumstances in which an officer's response to an inmate attack is so half-hearted that it effectively amounts to no response at all. … But surely there are cases at the other end of the spectrum in which an inmate fails to allege that an officer's response was so unreasonable as to give rise to an entitlement to relief."  *Id*. (discussing the pleading standard necessary to for a failure to intervene claim to survive a motion to dismiss).  "The key is whether prison officials acted reasonably; if so, they cannot be found liable on a failure-to-protect claim."  *Id.*

8

Courts have recognized that "the amount of time it takes prison officials to intervene in an inmate-on-inmate assault may be relevant in determining deliberate indifference." *Harper v. United States*, 2014 U.S. Dist. LEXIS 61072 (M.D. Pa. May 1, 2014) (citing *Shelton v. Bledsoe*, 2012 U.S. Dist. LEXIS 153059, *20 (M.D. Pa. 2012) (Nealon, J.) (holding that the record fails to support an Eighth Amendment claim because the inmate-on-inmate fight, the plaintiff's removal, and his medical assessment occurred within a matter of twelve minutes); *Bracey v. Harlow*, 2013 U.S. Dist. LEXIS 136670, *33-36 (W.D. Pa. 2013) aff'd 2014 U.S. App. LEXIS 12535 (3d Cir. Pa. July 2, 2014) (rejecting the plaintiff's failure to intervene claim, which faulted the defendants for waiting four minutes to subdue the other inmate, because the incident was called out immediately, several guards responded to secure both inmates and the weapon, within two minutes the plaintiff was removed from the yard and transferred to medical triage, and within another fourteen minutes, he was transported to the medical department for sutures).

Moreover, the amount of time it takes to intervene is "precisely the type of prison security matter where courts have recognized that they must defer to the experience and judgment of prison officials." *Bracey v. Harlow*, 2013 U.S. Dist. LEXIS 136670, 33-34 (W.D. Pa. Aug. 21, 2013) aff'd 2014 U.S. App. LEXIS 12535 (3d Cir. Pa. July 2, 2014).

9

In this case, the actions of the officers outside the cell and the time period it took them to intervene is captured on video.   At the time marked on the video as 4:54:06,  Sgt. Myers calls out that he sees a fight to the officer in charge, Lt. Allison, who is not a Defendants in this case.  Because Myers was not assigned to the RHU, his radio did not communicate with the RHU bubble.  The officers in the RHU bubble open the cell door remotely and have exclusive control of the cell door. Allison arrives at the door at 4:54:13.  During the next five seconds (from 4:54:15-4:54:20 in the video), the escorting officers command Mitchell to stop fighting at least three times.  During the next few seconds Lt. Allison appears to have a short conversation with Mitchell through the cell door.   The cell door is opened at 4:54:35. Exhibit A.  After the door opens, the officers immediately secure Mitchell on the floor.  Exhibit A.

Under these undisputed facts, there is no way that a reasonable jury could find that the Defendants were deliberately indifferent to a serious risk of harm to the Plaintiff.  As to the named Defendants, it is undisputed that Officers Vogt was not present when the assault occurred, and therefore he had no opportunity to intervene. Officer Clark arrived just as the cell door was being opened, and the other officers subdued Mitchell.

Similarly, it is undisputed that Sgt. Myers had no control over opening the door, and had no ability to communicate with the RHU bubble to have the door opened.   Myers acted reasonably by immediately calling over to the officer-in-charge, Lt. Allison.

Lt. Allison, the officer in charge, was not a named Defendant in this action. Even if he had been named, however, there is no dispute that he acted reasonably and promptly by ordering Mitchell to stop the assault prior to calling for the door to be opened.   The fight was called out by Myers at 4:54:06 and the cell door opened less than thirty-seconds later, at 4:54:35.   During this period of time, the officers were not standing by idly.   They were ordering Mitchell to stop and trying to quell the disturbance prior to entering the cell.   Lt. Allison conversed with Mitchell through the cell door in order to get him to cease the assault.   When Mitchell continued his assault, the officers entered and subdued him.   There was no failure to intervene and no deliberate indifference to the Plaintiff's plight.

## IV.   CONCLUSION:

For all the above reasons, it is respectfully requested that summary judgment be entered in favor of the Defendants.

Respectfully submitted,

Office of General Counsel

11

By:  <u>/s/Jeffrey M. Paladina</u>
     Jeffrey M. Paladina
     Assistant Counsel
     Attorney I.D. No. 81542
     PA Department of Corrections
     Office of Chief Counsel
     1920 Technology Parkway
     Mechanicsburg, PA 17050
     jpaladina@pa.gov

Dated:  August 29, 2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES KING, | : | |
| | : | Civil Action No. 13-cv-2186 |
| Plaintiff, | : | |
| | : | |
| | : | Judge Rambo |
| v. | : | |
| | : | |
| | : | **Filed Via ECF** |
| SGT. MYERS, et al., | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I am this day depositing in the U.S. mail a true and correct copy of the foregoing ***Brief in Support of Defendants' Motion for Summary Judgment*** upon the person(s) and in the manner indicated below.

Service by first-class mail

<u>addressed as follows:</u>

Charles King, CN4421
SCI-Coal Township
1 Kelley Drive
Coal Township, PA  17866-1020

<u>/s/ Rose A. White</u>
Rose A. White
Clerk Typist II
Office of Chief Counsel
Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA    17050

Dated:  August 29, 2014