# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES KING,** | **:** CIVIL NO. 1:CV-13-02186 |
| **Plaintiff** | **:** (Judge Rambo) |
| v. | **:** |
| **SERGEANT MYERS, et al.,** | **:** |
| **Defendants** | **:** |

# MEMORANDUM

Presently before the court are two motions to compel discovery filed by Plaintiff Charles King. (Docs. 59 & 76.) Specifically, Plaintiff is seeking from certain Defendants responses to: (1) his request for admissions, (2) his request for production of documents, (3) his interrogatories. For the reasons that follow, the motions to compel (Docs. 59 & 76) will be granted in part and denied in part.

## I.   Background

Plaintiff initiated this civil rights action pursuant to 42 U.S.C. § 1983 with a complaint filed on August 19, 2013, as amended January 27, 2014. (Doc. 24.) In the amended complaint, Plaintiff alleges that certain prison officials ("Corrections Defendants") at his former place of confinement, the State Correctional Institution at Smithfield ("SCI-Smithfield") in Huntingdon, Pennsylvania, failed to protect him and to intervene in an assault by another inmate, inmate Mitchell. Plaintiff also asserts

claims related to his subsequent medical treatment against other Defendants, medical personnel at SCI-Smithfield.

Corrections Defendants filed an answer to the complaint on February 7, 2014. (Doc. 28.)  Since that time, the parties have been engaging in discovery.  On April 8, 2014, the court issued an order setting the deadline for completion of discovery for June 9, 2014.  (Doc. 37.)  Outstanding are issues relating to discovery disputes regarding Plaintiff's request for admissions, his request for production of documents, and his interrogatories (*see* Docs. 59 & 76) served upon Corrections Defendants. Those issues will be discussed herein.

## II.     Discussion

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).  The polestar of discovery is relevance.  Relevance for discovery purposes is defined broadly.  The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  "[A]ll relevant material

is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Rule 26(b)(2) authorizes a court to limit discovery where

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). However, when there is no doubt about relevance, a court should tend toward permitting discovery. *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265-66 (E.D. Pa. 1992).

Federal Rule of Civil Procedure 37 allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure or discovery. The party seeking the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad

scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

In the instant case, Plaintiff alleges that he sent Corrections Defendants a "First Consolidated Set of Interrogatories and Request for Production of Documents and Interrogatories" on May 28, 2014, along with a First Set of Admissions. (*See* Doc. 59 ¶ 1.) Plaintiff also alleges that, at his deposition, he was informed that Corrections Defendants did not receive his request for admissions. (*Id*. ¶ 2.) He claims that he re-sent the request for admissions, but, to date, Corrections Defendants have not responded. (*Id*. ¶ 3.) He does admit that he received a response to his interrogatories and document requests. (*Id*. ¶ 4.) In addition, Plaintiff asserts that Corrections Defendants never provided him with an answer to an interrogatory relating to who gave the order to double-cell inmate Mitchell with him. (Doc. 76 ¶ 9.) As a result, Plaintiff requests that the court order Corrections Defendants: (1) to respond to his request for admissions, (2) to further respond to his request for production of documents, and (3) to respond to a previously-provided interrogatory. The court will review the separate requests and responses thereto at issue here in an effort to resolve the instant discovery dispute and place the case back in a posture to be resolved.

Prior to that review, the court notes that, in his second motion to compel discovery, Plaintiff claims that Corrections Defendants are requiring him to "purchase" any of the documents they produce in response to his request for production of documents. (Doc. 76 ¶ 4.) He contends that, because of his financial status, he is unable to make these purchases and, therefore, is effectively being denied discovery. (*Id.*) However, upon review of Corrections Defendants' response to Plaintiff's request for production of documents, it is clear that Plaintiff was not denied discovery in such a manner. (*See* Doc. 80-1, Ex. A, Corrections Defendants' Response to Plaintiff's Request of Production of Documents.) Rather, in the case of any produced document, Corrections Defendants instructed Plaintiff to submit a request slip to Trisha Kelley, the Superintendent's Assistant, in order to inspect the document. (*See id.* at 3.) In addition, Plaintiff was informed that he would be charged for any copies he wished to make. (*Id.*)

As Corrections Defendants correctly assert here, the practice of arranging for an inmate to inspect documents and charging him for any desired copies is consistent with such practices of many courts in the Third Circuit. This practice recognizes that "nothing in 28 U.S.C. § 1915 authorizes federal courts to finance or pay for a party's discovery expenses incurred while prosecuting a lawsuit, even if that party has been

5

granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). Review of the case law reveals that numerous courts within and without the Third Circuit have recognized the limitations of federal courts to relieve indigent litigants from the costs of pre-trial discovery." *Ball v. Sipe*, Civ. No. 1:12-CV-537, 2014 WL 2770223, at *3 (M.D. Pa. June 18, 2014) (collecting cases).

Further, Plaintiff also claims that he wrote several request slips to Ms. Kelley, but they were ignored. (Doc. 76 ¶ 5.) In response, Corrections Defendants state that they have contacted Ms. Kelley, and that, while she disputes Plaintiff's allegation that he contacted her numerous times, she and/or other prison officials have assured counsel that Plaintiff would be able to view the relevant videotape and inspect documents no later than November 3, 2014. (Doc. 80 at 2.)

As a result of these assertions by both parties, the court will grant Plaintiff an extension of time to respond to the pending dispositive motions.

### A. Plaintiff's Request for Admissions

As stated above, Plaintiff claims that he sent to Corrections Defendants a request for admissions on two occasions, but has not received a response. (Doc. 59 ¶¶ 1-3.) As a result, he now requests that the court compel Corrections Defendants to answer his request for admissions. In their response to the instant motion to compel,

Corrections Defendants assert that, to date, they have not received the request for admissions that Plaintiff allegedly sent to them.  (*See* Doc. 60 at 4.)  Consequently, they request that Plaintiff be directed to re-send his request for admissions to Corrections Defendants.  In light of these statements, and in order to expedite Plaintiff's discovery, the court will order Plaintiff to re-send his request for admissions to counsel for Defendants.

### B.     Plaintiff's Request for Production of Documents

Corrections Defendants have responded to, or objected to, several of Plaintiff's requests in his request for production of documents.  Those requests and objections are detailed as follows.

#### 1.     RHU Policies

In his request for production of documents, Plaintiff requested "any and all policies, directives and instructions to staff members/guards/employees regarding responsibilities of those people working in or entering the RHU." (Doc. 60-3 at 5, Ex. C, Plaintiff's First Set of Consolidated Request of Production of Documents and Interrogatories.)  Corrections Defendants responded by objecting to the wholesale release of the policy for security reasons, but did identify two sections of the procedures manual relevant to the case and made them available for Plaintiff's

inspection.  (*See* Doc. 60-4 at 4-5, Ex. D, Corrections Defendants' Response to Plaintiff's First Set of Consolidated Request of Production of Documents and Interrogatories.)  Specifically, Corrections Defendants produced Procedures Manual 6.5.1, Section 1, F.10, related to double-celling inmates.  (*See* Doc. 60-4 at 5.)  Additionally, in response to Plaintiff's interrogatory related to how many corrections officers must be present at a cell door before intervention is mandated, Corrections Defendants identified Procedures Manual 6.5.1, Section 1.D.7 and made it available for Plaintiff's inspection.  (*See, e.g.*, Doc. 60-4 ¶ 17, Sgt. Myer's Answer to Plaintiff's Interrogatories.)  Corrections Defendants have also identified and produced for Plaintiff the Use of Force policy, DC-ADM-201.  (Doc. 60-4 at 4.)

In his motion to compel, Plaintiff does not mention that Corrections Defendants' released such documentation for his inspection.  (Doc. 59 at 2.)  Rather, he simply states that the policy was not provided.  (*Id.*)

Upon review of Plaintiff's request and Corrections Defendants' response thereto, including their subsequent assurance that Plaintiff will be able to inspect such documents by November 3, 2014, *see supra*, the court finds Corrections Defendants' response to be a sufficient resolution of the request.  The court will direct Corrections

8

Defendants to inform the court by notice once Plaintiff has had the opportunity to inspect the relevant documentation.

### 2. **RHU Logbooks**

In his request for production of documents, Plaintiff requested "any and all rosters, sign in sheets, log books, work schedules of Department Corrections officers/employees, etc., or Police, who worked in, was assigned to, or entered into cell block "K Unit" with duty(s) relating to the transfer of Inmate Mitchell from his prior housing in a State Correctional Institutional (SCI) facility." (Doc. 80-1 at 5-6.) Plaintiff wanted these documents in order to determine who was on duty on the day inmate Mitchell allegedly assaulted Plaintiff, November 9, 2011. (*See* Doc. 76 ¶¶ 7, 10.) In response, Corrections Defendants agreed to produce the RHU log books from November 9, 2011. (*See* Doc. 80-1 at 6.) They further responded as follows:

> To the extent this request encompasses other documents, specifically the shift commander's report, showing the entire staff on duty at the prison, the Defendants object because the request is overbroad. In addition, revealing the numbers of prison staff and posts during a shift could be used by inmates to facilitate escape and thus presents a security risk. All the information related to the individuals assigned to work in the RHU during the relevant time is available in the document that the Defendants are producing.

(*Id.*)

Upon review of Plaintiff's request and Corrections Defendants' response thereto, including their subsequent assurance that Plaintiff will be able to inspect such documents by November 3, 2014, *see supra*, the court finds Corrections Defendants' response to be a sufficient resolution of the request. The court will direct Corrections Defendants to inform the court by notice once Plaintiff has had the opportunity to inspect the relevant documentation.

### 3. Documents Related to Inmate Mitchell's Prior Behavior And/Or Future Behaviors

In his request for production of documents, Plaintiff requested "any and all reports, records, misconducts, and instructions related to inmate Mitchell's prior behavior and/or future potential behaviors." (Doc. 60-3 at 5.) In response, Corrections Defendants objected to the request as overbroad and possibly including sensitive information which, if released, would violate inmate Mitchell's privacy rights. (*Id*.) However, they did list ten (10) misconducts inmate Mitchell received for fighting or assaultive behavior, and instructed Plaintiff to submit a request slip to Ms. Kelley for inspection of those documents. (*Id*. at 7.)

In his motions to compel, Plaintiff claims that Corrections Defendants only produced the list of misconducts, in addition to the content of the one (1) misconduct related to the assault at issue in this case. (Doc. 76 ¶ 8.) However, Corrections

Defendants assert that they will allow Plaintiff to inspect the content of all ten (10) misconducts, presumably at the same time he inspects the other documents at issue here, on or before November 3, 2014.  (Doc. 80 at 3.)

Upon review of Plaintiff's request and Corrections Defendants' response thereto, including their subsequent assurance that Plaintiff will be able to inspect such documents by November 3, 2014, *see supra*, the court finds Corrections Defendants' response to be a sufficient resolution of the request.  The court will direct Corrections Defendants to inform the court by notice once Plaintiff has had the opportunity to inspect the relevant documentation.

### 4. **Documents, Grievances, and Reprimands Against Corrections Defendants**

In his request for production of documents, Plaintiff requested "any and all documents, reports, grievances, sanctions, reprimands filed against the defendants in this matter during the prior year."  (Doc. 60-3 at 6.)  In response, Corrections Defendants objected, asserting that Corrections Defendants' personnel files contain confidential information that would present a security risk if released to an inmate.  (Doc. 60-4 at 8.)  In addition, the release of these personnel files would violate Corrections Defendants' privacy rights.  (*Id*. at 9.)  Finally, they claim that the request

is overbroad because it is not confined to disciplinary information similar to Plaintiff's claims. (*Id*.)

In his motion to compel, Plaintiff contends that the requested information is essential to his case because if one of more of the Defendants had a history of violating prison regulations, that information may support Plaintiff's allegation that Defendants again failed to follow prison policies by refusing to intervene in the alleged fight. (Doc. 59 at 3.) He also argues that knowledge of a prison official's past misconducts is not protected information not subject to discovery. (*Id*.)

Upon review, the court finds that Corrections Defendants' concerns are valid and that requested documents must be kept confidential in the interests of prison safety and security. However, in order to resolve this discovery dispute, the court will direct Defendants to provide the requested material to the court for *in camera* review in order to determine if any portions of the material can be redacted for use by Plaintiff.

### C. Interrogatory Related to the Order to Double-Cell Plaintiff

In his second motion to compel, Plaintiff claims that he has repeatedly asked in interrogatories who gave the order to double-cell inmate Mitchell with him, but the information was never provided. (Doc. 76 ¶ 9.) In response, Corrections Defendants

assert that the responding Defendants answered that they could not recall who gave that order. (Doc. 80 ¶ 7.) The attached answers to Plaintiff's interrogatories confirm this response.[1] (*See* Doc. 80-1 at 11, 16, 21.) As a result, Corrections Defendants contend, Plaintiff is not being denied discovery.

The court agrees with Corrections Defendants, finding their response to be a sufficient resolution of Plaintiff's request. Thus, the court will not direct Corrections Defendants to further answer Plaintiff's relevant interrogatories.

## III. Conclusion

---

[1] Plaintiff submitted interrogatories to three Corrections Defendants relevant to this dispute. (*See* Doc. 80-1.) Specifically, the first two interrogatories were set forth as follows: (1) Who was responsible for assigning inmate Mitchell to K-Unit, cell 22, o[n] or about November 9, 2011, and (2) How was it determined that inmate Mitchell would be double-celled with Mr. King in K-Unit, cell 22, on November 9, 2011. (Doc. 80-1 at 11, 16, 21.) In response to the first interrogatory, all three Defendants answered that they did not recall who was responsible for the assignment. (*See id.*) In response to the second interrogatory, two of the three Defendants indicated that they were not involved in any decision to double-cell inmate Mitchell, and the third, Defendant Officer Vogt, provided the following response:

> Mitchell would have been celled with King based on availability. Neither inmate had single cell status, which would have required them to be single celled. Typically, we would request the inmate who is going to get a cellmate whether he will accept a cellmate.

(*Id.* at 21.)

Based on the foregoing, it is clear that Corrections Defendants have attempted to comply, in a good faith effort, with the discovery requests served upon them by Plaintiff.  They have tried to make documents available for inspection which are not privileged, irrelevant, overbroad or objectionable on any other basis.  However, certain requests, discussed herein, remain outstanding.  Corrections Defendants have asserted that Plaintiff will be permitted inspection of his requested documents on or before November 3, 2014.  Recognizing that this date has passed, the court will require Corrections Defendants to file a notice informing the court of such inspection once it has occurred, if not already.  Further, Defendants will be directed to respond to the court's order concerning the court's *in camera* review of certain documents on or before December 5, 2014.

An appropriate order will issue.

    s/Sylvia H. Rambo
    United States District Judge

Dated:  November 13, 2014.